UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| CARA L. WEST, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 3:15-cv-437 |
| | ) | Judge Aleta A. Trauger |
| | ) | |
| EMERITUS CORPORATION, | ) | |
| | ) | |
|     Defendant. | ) | |

## MEMORANDUM

The defendant, Emeritus Corporation ("Emeritus"), has filed a Motion for Summary Judgment (Docket No. 22), to which the plaintiff has filed a Response (Docket No. 25), and Emeritus has filed a Reply (Docket No. 27). For the following reasons, the motion will be denied.

## BACKGROUND

This case arises from the plaintiff's employment as the Resident Care Director of the Terrace at Bluegrass ("Bluegrass"), a residential living community operated by the defendant, Emeritus. The plaintiff, Cara L. West, filed this action pursuant to the Fair Labor Standards Act ("FLSA"), alleging that Emeritus failed to pay her overtime wages for time that she routinely worked over 40 hours in a week. (Docket No. 1 ¶¶ 16–19.) Emeritus argues that Ms. West is not entitled to overtime wages under the FLSA because she was employed in a *bona fide* executive capacity and, therefore, the FLSA's overtime provisions do not apply to her. (Docket No. 22-1, p. 1.) Emeritus now seeks summary judgment on this ground.

As a preliminary matter, the court notes that Emeritus has raised objections to the evidence submitted by the plaintiff in opposition to the pending motion. First, Emeritus argues

1

that Ms. West failed to comply with Local Rule 56.01 when she failed to include record citations supporting the denials she makes in her Response to Emeritus's Statement of Material Facts. (Docket No. 27, pp. 4–5.) As a sanction for her failure to comply with the local rules, Emeritus argues that Ms. West's denials should be treated as admissions for the purposes of summary judgment. (*Id.*) Emeritus does not, however, identify any specific denials that it claims to be insufficiently supported, and a review of Ms. West's Response to Emeritus's Statement of Material Facts reveals that she provides at least *some* record citation in all but two of her denials. (Docket No. 26 ¶¶ 4, 11.) To the extent that any of Ms. West's denials are not adequately supported by citations to the record, however, the court will disregard those denials in its recounting of the facts below.

Emeritus's second objection to Ms. West's opposition is that it relies primarily on "a self-serving sham declaration that must be disregarded because it *directly* contradicts her prior sworn deposition testimony." (Docket No. 27, p. 2.) Alleging that the declaration is "nothing more than a poorly-veiled attempt to create a factual dispute and survive summary judgment dismissal," Emeritus argues that the document should be disregarded "in its entirety" pursuant to the Sixth Circuit's well-established sham affidavit rule. (*Id.* at 4.) The sham affidavit rule states that "[a] party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts her earlier deposition testimony." *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986). If an affidavit submitted at summary judgment contradicts the affiant's prior sworn testimony, "it should be stricken unless the party opposing summary judgment provides a persuasive justification for the contradiction." *France v. Lucas*, 836 F.3d 612, 622 (6th Cir. 2016) (quoting *Aerel, S.R.L v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 908 (6th Cir. 2006)). As Emeritus correctly observes, portions of Ms. West's declaration

directly contradict her prior deposition testimony, and Ms. West has offered no justification for those contradictions. The court, therefore, will note those portions in its discussion of the facts below and, pursuant to the sham affidavit rule, exclude them from its consideration of the pending motion.

The court does not find it appropriate to disregard Ms. West's declaration in its entirety, however, as much of it does not *directly* contradict Ms. West's deposition testimony. While the court understands – and, to some extent, shares – Emeritus's concern that the declaration was created and submitted solely to create disputes of fact sufficient to survive summary judgment, it has no grounds for excluding the portions of Ms. West's declaration that do not directly contradict her prior deposition testimony. *See Aerel*, 448 F.3d at 909 (declining to extend the sham affidavit rule in a way that would "transform the straightforward, objective inquiry needed to decide whether an affidavit contradicts deposition testimony into a more subjective evaluation of a party's prior opportunities during discovery to present evidence and whether that party could have or should have been more forthcoming in her deposition").

## **FACTS**[1]

Bluegrass is a residential living community located in Hendersonville, Tennessee that is comprised of an assisted living department for senior residents and a memory care department for residents with impaired cognitive function. Bluegrass employs at least four Licensed

---

[1] Unless otherwise noted, the facts recounted in this section are drawn primarily from Emeritus's Statement of Undisputed Material Facts (Docket No. 22-2), the plaintiff's response thereto (Docket No. 26), the plaintiff's Statement of Material Facts (Docket No. 25-2), and Emeritus's response thereto (Docket No. 27-1). This section also contains facts from Emeritus's Memorandum of Law in support of the pending motion (Docket Nos. 22-1), the plaintiff's Response (Docket No. 25-1), and Emeritus's Reply (Docket No. 27), that are not refuted or contradicted by the opposing party or the record. Where there is a genuine dispute of fact, the court will construe the fact in the light most favorable to the plaintiff as the non-moving party.

Practical Nurses ("LPNs"), who assist in providing care to the community's residents by managing their care according to their individual needs, ordering and administering prescription medications, collecting samples of bodily fluids for testing, and assisting with daily needs, such as bathing, dressing, and feeding. Bluegrass also employs ten to fifteen Technicians, who assist in providing care to residents by answering calls, checking vital signs, escorting them around the premises, serving meals, and assisting with bathing, showering, and restroom use. These LPNs and Technicians report directly to a Resident Care Director, who oversees their work in the assisted living department, and a Memory Care Director, who oversees their work in the memory care department. Both the Resident Care Director and Memory Care Director report to Bluegrass's Executive Director, who works in an office on site at Bluegrass and oversees the entire community, including the assisted living, memory care, maintenance, marketing, and dietary departments. (Docket No. 22-3 (Depo. C. West), 43:23–45:15, 65:1–3.)

In April of 2012 – shortly after she first received her LPN license – Ms. West applied, and was hired, for a position at Bluegrass. Based on the portion of her application for employment that Ms. West placed in the record, it appears that she initially applied for a position as an LPN. (Docket No. 25-4 (Application), p. 1.) The parties agree, however, that Ms. West was hired with the understanding that she would become the community's Resident Care Director after the then-current Resident Care Director, Kathy Stolzer, finished working out her notice period. (Docket No. 22-3, 27:1–29:14.) Pursuant to this understanding, Ms. West worked for a few weeks as an LPN while Ms. Stolzer trained her to assume the Resident Care Director position. During that time, Ms. West was apparently paid at an hourly rate of $20 per hour, even though she has submitted a "Job Confirmation Document" into the record suggesting that, as an LPN, she was entitled to only $17 per hour in pay. (Docket No. 25-4, p. 2.) At some point in

4

late April or early May of 2012, Ms. West fully transitioned to Resident Care Director at Bluegrass, and she began to be paid on a salary basis of $800 per week. (Docket No. 22-3, 27:1–28:7, 81:3–11.)[2]

As Resident Care Director, Ms. West had responsibilities relating to (1) shift scheduling for the LPNs and Technicians working in the assisted living department; (2) the hiring, management, and discipline of the LPNs and Technicians employed at Bluegrass; and (3) the care provided to community residents. With respect to scheduling, Ms. West was responsible for drafting a work schedule for all of the LPNs and Technicians working in the assisted living department. If an LPN or Technician missed a shift, Ms. West was responsible for ensuring that the shift was covered by another employee, either by finding a replacement or working the shift herself. According to Ms. West, these efforts were often constrained by the fact that the Executive Director would not approve overtime pay for hourly employees such as the LPNs and Technicians (*id.* at 90:20–23), and "Tennessee state law required [Bluegrass] to have a LPN on site at all times, because of the residents with Alzheimer's disease" (Docket No. 27-1 ¶ 19). Because there were often vacancies in the LPN ranks, and because Ms. West is licensed as an

---

[2] Ms. West freely admitted that she was paid on a salary basis during her deposition, agreeing with counsel for Emeritus that she was paid $800 per week "regardless of how many hours [she] worked," including when she worked "more than 40 hours" or "fewer than 40 hours" in a given week. (Docket No. 22-3 (Depo. C. West), 125:8–19.) In her declaration, however, Ms. West attempts to create a dispute of fact by citing an "earnings report" that she received for the pay period ending May 5, 2012, showing that she was paid $20 per hour for 82 hours of work, for a total of $1640. (Docket No. 25-3 ¶¶ 20–21 (citing Docket No. 25-7).) This earnings report does not, however, create a *genuine* dispute of fact regarding whether Ms. West was paid on a salary basis of $800 per week *after* her transition to Resident Care Director was complete, particularly in light of her own deposition testimony that she was paid in such a manner and additional, later earnings reports – placed into the record by Ms. West herself – showing that she was paid $1600 in salary every two weeks for the rest of her employment with Emeritus. (Docket No. 25-8 (earning statements from August of 2012 to March of 2013).)

5

LPN, she often worked shifts for employees who could not make their shift or who had resigned from their position.

With respect to the hiring, management, and discipline of the LPNs and Technicians employed at Bluegrass, it is clear that Ms. West had the authority to make recommendations regarding their employment, but also that any decision regarding that employment was reserved for the Executive Director. Ms. West reviewed resumes and conducted interviews of potential new hires with the Memory Care Director, with the Executive Director "stop[ping] in occasionally." (Docket No. 22-3, 55:25–56:6.) In conjunction with the Memory Care Director, Ms. West made hiring recommendations to the Executive Director, and she cannot recall any of their joint recommendations being ignored. (*Id.* at 57:7–22.) With respect to the LPNs and Technicians under her supervision, Ms. West maintained manager files tracking their performance metrics. She was also expected to complete performance evaluations for those employees, and she made recommendations regarding increases in their pay based on the evaluations.[3] Ms. West also admits that she had the authority to discipline LPNs and Technicians, which included the authority to conduct verbal coaching sessions, educate her subordinates on proper techniques, and recommend disciplinary action such as separation or suspension to the Executive Director. (*Id.* at 77:1–78:22.)

With respect to resident care, Ms. West was responsible for ensuring that community residents received appropriate care from the LPNs and Technicians under her supervision. Ms. West drafted care plans for Bluegrass residents that were used by LPNs and Technicians in

---

[3] In her declaration, Ms. West states that she "never recommended a pay raise for an employee." (Docket No. 25-3 ¶ 13.) The court will disregard this statement, which directly contradicts Ms. West's prior deposition testimony that she did, in fact, recommend raises in pay. (Docket No. 22-3, 153:3–4 ("Q: So would you recommend pay raises for folks? A: At the time of evaluation, yes.").)

administering care, and she alone had access to a computer program – "We Care" – that she used to track resident progress. In addition to tracking resident progress, Ms. West received and implemented feedback that she received from residents regarding their care, and she held monthly meetings with residents and their families to solicit complaints and facilitate the feedback process. Finally, Ms. West was responsible for ensuring that certain aspects of the care provided to residents – primarily the administration of medication and the screening of potential residents – were conducted in compliance with local and state regulations.

In addition to monitoring the care provided to residents, Ms. West was responsible for providing direct care to residents as an LPN and, at times, as a Technician. Ms. West avers in her declaration that she spent 80% to 85% of her time as Resident Care Director providing direct nursing care to residents, and she argues that, despite her management duties, she was "more of an LPN than a manager" in her day-to-day work. (Docket No. 25-3 ¶¶ 7–11.) Emeritus, on the other hand, disputes this portion of her declaration, arguing that it directly conflicts with her deposition testimony that she "only performed such manual duties when the LPNs and Technicians she supervised would call off work and when needed to maintain employee morale." (Docket No. 27-1 ¶¶ 8–11 (citing Docket No. 22-3, 49:20–50:9, 92:4–13).) Though Ms. West testified in her deposition that she filled in for employees who missed their shifts, however, nothing in her testimony limits the circumstances under which she provided nursing care to residents solely to instances in which an employee missed a shift or it was necessary to maintain employee morale. Moreover, the job description for the Resident Care Director position – placed in the record by Ms. West – includes in the position's "essential functions" the "[p]erform[ance] [of] licensed nurse tasks within scope of practice as allowed by state law." (Docket No. 25-5 (Job Description), p. 2.) Emeritus has, therefore, failed to demonstrate that Ms. West's

estimation of the time she spent providing resident care directly contradicts her deposition testimony or should otherwise be excluded from the court's consideration of the pending motion, and the court will construe this dispute of fact in Ms. West's favor, as it must on summary judgment, in its analysis below.

In June of 2013, shortly over a year after she was first hired, Ms. West resigned as Resident Care Director and left her employment with Emeritus. (Docket No. 22-3, 30:10–11.) According to Ms. West, she resigned her employment because she found the workload and the hours she was required to work to be excessive, and she "didn't feel like [she] was getting the support [she] needed from the executive director." (*Id.* at 118:2–25.) She filed this action on April 15, 2015, almost two years after her resignation. (Docket No. 1.)

## PROCEDURAL HISTORY

On October 7, 2016, Emeritus filed the pending motion (Docket No. 22), accompanied by a Memorandum of Law (Docket No. 22-1), a Statement of Undisputed Material Facts (Docket No. 22-2), and a transcript of Ms. West's deposition testimony (Docket No. 22-3). In its Memorandum, Emeritus argues that Ms. West is not entitled to overtime compensation because the FLSA's overtime provisions do not apply to employees who, like Ms. West, are employed "in *bona fide* executive capacities." (Docket No. 22-1, p. 1.) Using Ms. West's deposition testimony as support, Emeritus asserts that she was properly classified as exempt pursuant to a four-part test promulgated by the Department of Labor and commonly used to determine whether an employee is employed in an executive capacity. (*Id.* at pp. 4–5 (quoting 29 C.F.R. § 541.100).) Specifically, Emeritus argues that Ms. West was exempt from the FLSA's overtime provisions because she was (1) paid on a salary basis of more than $455 per week, (2) had as her primary duty the management of the assisted living department, (3) customarily and regularly

directed the work of more than two employees, and (4) made suggestions regarding the hiring and firing of others that were given weight. (*Id.* at pp. 5–17.)

On November 3, 2016, Ms. West filed a Response in Opposition to Emeritus's motion (Docket No. 25), accompanied by a Memorandum of Law (Docket No. 25-1), a Response to Emeritus's Statement of Undisputed Material Facts (Docket No. 26), her own Statement of Material Facts (Docket No. 25-2), and her declaration (Docket No. 25-3). In her Response, Ms. West argues that she was not properly classified as an exempt executive, because she (1) was paid on an hourly basis at a rate of $20 per hour; (2) had as her primary duty the provision of direct care to residents; (3) spent very little time on her management duties and did not, therefore, "regularly" direct the work of other employees; and (4) did not make recommendations regarding the hiring or firing of other employees that were given any particular weight. (Docket No. 25-1, pp. 8–16.)[4]

Emeritus filed a Reply on November 14, 2016 (Docket No. 27), accompanied by a Response to Ms. West's Statement of Material Facts (Docket No. 27-1). In the Reply, Emeritus argues that Ms. West "does not have the evidentiary proof needed to survive summary judgment," asserting that she relies solely on a "sham declaration" to oppose the pending motion, and that she fails to address "controlling legal authority from this Court" demonstrating that, as Resident Care Director, she is exempt from the FLSA's overtime provisions. (Docket No. 27, p. 1.) Emeritus further argues that Ms. West could be properly classified as an exempt executive

---

[4] Because the court finds that Emeritus has failed to carry its burden of establishing that Ms. West was exempt from the FLSA's overtime provisions, it does not make any decision regarding the viability of Ms. West's alternative arguments for denying summary judgment, including that Emeritus failed to pay her one and one-half times her $20 per hour wage for two overtime hours that she worked as an LPN before she transitioned to Resident Care Director. (Docket No. 25-1, pp. 7–8 (citing Docket No. 25-7).)

9

even if her primary management duties did not occupy the majority of her time, because her managerial duties were relatively more important than her non-managerial duties. (*Id.* at pp. 9–11.)

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If a moving defendant shows that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings, "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Conversely, a moving party bearing the burden of proof on a claim must show that the non-moving party cannot raise a genuine issue of fact regarding any element of the relevant claims. In both instances, "[i]n evaluating the evidence, the court must draw all inferences in the light most favorable to the non-moving party." *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At this stage, "'the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient," and the party's proof must be more than "merely colorable." *Anderson*, 477 U.S. at 252. An issue of fact is "genuine" only if a reasonable jury could find for the non-moving party. *Moldowan*, 578 F.3d at 374 (citing *Anderson*, 477 U.S. at 252).

## ANALYSIS

The FLSA provides that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of [40 hours per week] at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). Emeritus does not deny that it failed to pay Ms. West overtime wages but, instead, argues that she was not entitled to those wages because she was employed in a "*bona fide* executive capacity" under the FLSA and, therefore, exempt from the its overtime provisions. (*See* Docket No. 22-1, p. 4 (quoting 29 U.S.C. § 213(a)(1)).)

As the Sixth Circuit has repeatedly cautioned, FLSA overtime exemptions "are affirmative defenses on which the employer has the burden of proof, and those exemptions are to be narrowly construed against the employers seeking to assert them." *Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 502 (6th Cir. 2007) (internal citations omitted); *accord Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 846–47 (6th Cir. 2012). Emeritus, therefore, must establish "through clear and affirmative evidence" that Ms. West meets the requirements of the executive exemption from the protections of the FLSA. *Ale v. Tenn. Valley Auth.*, 269 F.3d 680, 691 n.4 (6th Cir. 2001); *see also Renfro v. Ind. Mich. Power Co.*, 497 F.3d 573, 576 (6th Cir. 2007) (stating that, while still the rule in the Sixth Circuit, the "clear and affirmative" standard does not heighten the evidentiary burden borne by the defendant beyond the burden typically placed on a defendant seeking summary judgment on an affirmative defense).

Regulations promulgated by the Department of Labor provide that an "employee employed in a *bona fide* executive capacity" is any employee:

> (1) Compensated on a salary basis pursuant to § 541.600 at a rate per week of not less than [$455] . . . ;

> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
>
> (3) Who customarily and regularly directs the work of two or more other employees; and
>
> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a). It is clear from the record that Ms. West was compensated on a salary basis of $800 per week, directed the work of the LPNs and Technicians in the assisted living department, and made recommendations as to the hiring and advancement of some Bluegrass employees. It is additionally clear that Ms. West had duties relating to the "management" of the assisted living department, including her duties relating to (1) shift scheduling for the LPNs and Technicians working in that department; (2) the hiring, management, and discipline of those employees; and (3) the quality of the care provided to community residents by those employees. *See* 29 C.F.R. § 541.102 (stating that "management duties" include, but are not limited to, setting hours for other employees, directing their work, and interviewing and training them). The court must nevertheless deny Emeritus's request for summary judgment, because Emeritus has failed to carry its burden of producing clear and affirmative evidence establishing that her primary duty was management, as opposed to her non-managerial work providing direct nursing care to Bluegrass residents.[5]

Under the FLSA, an employee's "primary duty" is her "principal, main, major or most important duty," and any determination of that duty "must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." *Id.* at

---

[5] Emeritus has not argued that Ms. West's provision of care to community residents – either as an LPN or as a Technician – would qualify as "management" for purposes of the FLSA, nor does such work appear to fall within the definition of "management" found in Department of Labor regulations. *See* 29 C.F.R. § 541.102.

§ 541.700(a). Ms. West asserts that she was not employed in an "executive" capacity because she spent 80% to 85% of her time performing the same manual, non-managerial tasks as were performed by the LPNs and Technicians under her supervision. (Docket No. 25-1, pp. 14–15.) This evidence alone is not, however, sufficient to defeat Emeritus's request for summary judgment. Department of Labor regulations provide that "[t]he amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee," but they also caution that "time alone . . . is not the sole test." *Id.* at § 541.700(b). According to these regulations, "[e]mployees who do not spend more than 50 percent of their time performing exempt duties may. . . meet the primary duty requirement if . . . other factors support such a conclusion." *Id.* These other factors include: (1) the relative importance of the exempt duties as compared with the employee's non-exempt duties, (2) the employee's relative freedom from direct supervision, and (3) the relationship between the employee's salary and the wages paid to other employees for the kind of non-exempt work performed by the employee. *Id.* at § 541.700(a). The court must, therefore, determine whether Emeritus has produced clear and affirmative evidence establishing that these other factors weigh in favor of a finding that Ms. West's primary duty was management of the assisted living department.

From the evidence in the record, the court cannot determine whether Ms. West's management duties were more important than her work providing nursing care to community residents. Emeritus argues that Ms. West's managerial duties – which included interviewing, employee evaluations, management meetings, scheduling, and performance monitoring – were "integral to Bluegrass's resident care department" and "necessary for daily operations." (Docket No. 27, pp. 8–10.) The question is not, however, whether Ms. West's managerial responsibilities were important but, rather, whether the evidence demonstrates that they were *more* important

13

than her other duties. Ms. West has submitted evidence demonstrating that she was one of only five licensed LPNs on Bluegrass's staff and that she was regularly required to work as an LPN because, if Bluegrass had no LPN on site, the facility would be operating in violation of Tennessee law. The ability to operate in compliance with state law is arguably "important or critical to the success of [Bluegrass's] business," and the court cannot, therefore, conclude that Ms. West's managerial duties were necessarily more important than the nursing care she provided to residents, particularly when she was the only LPN on site. *Thomas*, 506 F.3d at 505 (quoting *Donovan v. Burger King Corp.*, 675 F.2d 516, 521 (6th Cir. 1982)); *see also McCall v. First Tenn. Bank Nat'l Ass'n*, No. 3:13-cv-00386, 2014 WL 2159007, at *7 (M.D. Tenn. May 23, 2014) (concluding that the plaintiff's management duties were more important than her work as a teller, but only because other tellers were always working and the bank would, therefore, continue to function if the plaintiff did not work as a teller).

The court further cannot determine the extent to which Ms. West was free from direct supervision. Referring generally to its discussion of Ms. West's "day-to-day management responsibilities," Emeritus argues that Ms. West was not "relatively free from supervision" but, rather, "almost *completely* independent when hiring, disciplining, scheduling, and assigning job duties to LPNs and Technicians." (Docket No. 22-1, p. 15.) The Executive Director worked in an office located on Bluegrass premises, however, so Ms. West did not have any of the "autonomy inherently associated with being the most senior on-site employee." *Thomas*, 506 F.3d at 507. Additionally, Emeritus's argument is further belied by Ms. West's description of multiple circumstances in which she was required to seek approval from the Executive Director or was otherwise constrained in carrying out her management duties. For example, Ms. West was not allowed to schedule LPNs or Technicians to work hours that would entitle them to

overtime pay without getting prior approval from the Executive Director, which was rarely given. According to Ms. West, this inability to schedule LPNs and Technicians for overtime hours severely hampered her scheduling efforts and, often, resulted in Ms. West herself having to work as an LPN. Furthermore, Ms. West interviewed candidates and evaluated the performance of the LPNs and Technicians under her supervision, but it is undisputed that any decision regarding the hiring of a new employee or an increase in pay was reserved for the Executive Director, as was any decision to take disciplinary action against an employee.

Finally, a comparison of Ms. West's salary to the hourly wage paid to other employees who provided nursing care to community residents does not support Emeritus's argument that Ms. West was primarily a manager. Ms. West was compensated on a salary basis of $800 per week, which is the equivalent of (1) a wage of $20 per hour if she worked 40 hours in a week, and (2) a wage of only $16 per hour if she worked 50 hours in a week. LPNs performing purely non-exempt nursing work at Bluegrass, on the other hand, appear to have made $17 per hour. As Resident Care Director, Ms. West made *at most* $3 an hour more – and at times, less – than a non-exempt, hourly employee performing substantially the same work, a difference that is not significant enough to demonstrate that Ms. West's primary duty was management of those employees. *Thomas*, 506 F.3d at 509 (finding a salary that was 30% more than that received by hourly employees to be significant); *Roberts v. Dolgencorp, Inc.*, No. 2:09–0005, 2010 WL 4806792, at *10 (M.D. Tenn. Nov. 18, 2010) (same).

Emeritus has, therefore, failed to demonstrate that the other factors outlined in 29 U.S.C. § 541.700 weigh in favor of a finding that Ms. West's primary duty was management of the assisted living department and, thereby, carry its affirmative burden of demonstrating that she is exempt from the FLSA's overtime provisions. Ultimately, the parties' evidence boils down to

15

differing characterizations of Ms. West's duties, with Emeritus characterizing Ms. West as a manager who occasionally performed nursing work and Ms. West characterizing herself as "more of an LPN than a manager." (Docket No. 25-3 ¶ 7.) It must, therefore, "be left to a trier of fact to weigh the credibility of the parties' contradictory characterization[s] of [the plaintiff's] day-to-day duties." *Henry v. Quicken Loans, Inc.*, 698 F.3d 897, 901 (6th Cir. 2012). Accordingly, the court will deny summary judgment to Emeritus on Ms. West's claim for overtime wages under the FLSA.

## CONCLUSION

For the reasons discussed herein, Emeritus's Motion for Summary Judgment will be denied.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge